# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN D. MATTHEWS, ) | 1:08cv01016 GSA |
| ) | |
| ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, ) | SOCIAL SECURITY COMPLAINT |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## **BACKGROUND**

Plaintiff Karen D. Matthews ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income, pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On August 27, 2008, the action was reassigned to the Honorable Gary S. Austin for all purposes.

**FACTS AND PRIOR PROCEEDINGS**[2]

On March 28, 2006, Plaintiff applied for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act, alleging disability since October 1, 1990, due to a history of hepatitis C, lymphedema, adjustment disorder with mixed emotional features, polysubstance dependence in partial remission and personality disorder. AR 10.  The application was denied initially and upon reconsideration. AR 10.  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). AR 10.  ALJ Christopher Larsen held a hearing on November 14, 2007, and issued an order denying benefits on December 26, 2007. AR 8, 9.  On May 30, 2008, the Appeals Council denied review. AR 1-3.

<u>Hearing Testimony</u>

ALJ Larsen held a hearing on November 14, 2007, in Fresno, California.  Plaintiff appeared and testified.  She was represented by Melissa Proudian. AR 8.  Vocational Expert ("VE") Judith Najarian also testified. AR 8, 47-49.

Plaintiff was forty-nine years old[3] at the time of the hearing. She stated that she was 5'1-1/2" tall and weighed about 185 pounds and that she had been that weight for a considerable number of years. AR 26.  Plaintiff testified that she was divorced. AR 26. She claimed to be left-handed. AR 26. After she had stated her contact information, Plaintiff replied that she did not have a valid California driver's license, although she admitted to having had one in the past. Plaintiff explained that her previous license had been suspended for nonpayment of tickets. AR 27. She stated that she did not drive without her license and that she got around either by bus or by biking. AR 27. According to Plaintiff, she could go about a mile, to a mile-and-a-half on her bike. AR 27. When asked about her education, Plaintiff said that she had completed the tenth grade, and later acquired a Graduate Equivalency Diploma or GED. AR 27. Plaintiff testified that she had no vocational training of any sort, and that she had last held a job in 1977. AR 28.  Upon

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] The transcript states that Plaintiff was thirty-nine years old as of the date of the hearing. However, the record clearly indicates that she was forty-nine years old as of November 14, 2007, the date of the hearing.

2

being asked whether she could work eight hours a day, five days a week, Plaintiff stated that she could not. AR 28. She explained that her severe mood swings, back pain, and frequently swollen legs would not permit her to work. AR 28. Plaintiff testified that she had been diagnosed with hepatitis C, but did not offer any other reasons for her inability to work. AR 28.

Plaintiff talked about her frequent mood swings, and how trivial things would cause her to "fly off the handle." AR 28. She also stated that she would experience episodes of anger seven days a week, and that she felt that she was "highly strung." AR 29. Sometimes, these episodes would last four to five hours, and Plaintiff would relieve her anger by taking a solitary walk and sitting in a safe place by herself. AR 29. Plaintiff would sit in solitude for three to four hours at such times. AR 29. She added that she isolated herself in this manner about five times a week, and cumulatively spent about twelve hours a week doing so. AR 30. Plaintiff testified that these anger episodes had been going on for several years, and that sometimes she would be tempted to grab the person who had angered her. AR 30. Oftentimes, Plaintiff would just turn around and walk away. AR 30. According to Plaintiff, about a week ago, she tried to attack a girl for stealing $20 out of her purse. AR 30. Although Plaintiff attempted to attack the girl, Plaintiff was restrained by her boyfriend. AR 31. Plaintiff also testified to other violent episodes that had been triggered over the years. AR 31.

According to Plaintiff, she also experiences bouts of depression on a daily basis. AR 31. When asked what triggered these episodes, Plaintiff explained that just reminiscing about the past, and what she had been through would be enough to precipitate the sadness. AR 31. Plaintiff explained that her son's release from prison after twelve years was also a precipitating factor, and that she felt especially sad since he blamed her for his plight. AR 32. According to Plaintiff, these episodes of sadness often lasted four to five hours a day, and she relieved her pain by crying in solitude. AR 32. Although currently not on any medication, Plaintiff had sought psychiatric treatment in the past. AR 32. At the age of thirteen, she had been institutionalized by her mother. AR 32. A year and a half ago, Plaintiff had been in a methadone clinic where she had been receiving individual, once-a-week counseling; but all that stopped when she lost her Medi-Cal. AR 32. Plaintiff was on methadone at the time because her husband had previously gotten

her mixed up with heroin. AR 33. Plaintiff testified that her last experimentation with heroin had been about six years ago, but that she had used crystal meth just a few months ago. AR 33. Although Plaintiff denied using meth on a regular basis, she testified that the last episode had been triggered by an unpleasant altercation with her son, and that on that occasion, the stint had lasted three days. AR 34. Plaintiff testified that she financed these drug purchases by recycling cans and aluminum. AR 34. Although she had no steady income, Plaintiff said that she was receiving general relief, and food stamps. AR 34.

Upon being asked whether her mood swings affected her concentration and focus, Plaintiff testified that she could hold her focus no more than half an hour at best, and would often get distracted after that. AR 35. Her son would then have to remind her to get back to what she was doing. AR 35. After focusing for about thirty minutes, Plaintiff would require a fifteen minute break before she could refocus. AR 35.

According to Plaintiff, only she and her boyfriend currently occupied their home. AR 34. Plaintiff testified to doing the cooking and cleaning about once or twice a day. Her boyfriend assisted her at such times. AR 35. Plaintiff also claimed that she had a bad habit of leaving the burner on and walking away. Plaintiff testified to doing the laundry, vacuuming and dusting. Although she tried to do these on a daily basis, she would often lose her focus and the tasks would remain unfinished.  AR 36.

Plaintiff also testified to entertaining suicidal thoughts a few times a month. As a teenager, she had acted on those thoughts, but had not done so in the last five years. AR 36.

Plaintiff stated that her appetite had not been good lately on account of the gastric bypass surgery. If she ingested too much, she would often feel miserable. AR 37.

Plaintiff testified to having one friend whom she would meet a few times a week. They would go to pick up her friend's daughter or would go to visit her friend's father. AR 37. But they did not go to the movies, or eat out, or go to church, and Plaintiff does not belong to any other social clubs or groups. AR 37.

Upon being asked about the swelling in her legs, Plaintiff testified that it happened four to five times a week, and that she would have to elevate her legs about five times during the week.

Plaintiff testified that she typically spent ten hours a day elevating her legs. AR 38. This would usually be in increments of fifteen to twenty minutes each, often extending to an hour or two on certain days. AR 38. This practice had been going on for the last couple of years. Plaintiff testified that if she failed to elevate her legs at such times, her ankles would swell up significantly and she would experience a seeping sensation in her feet. AR 39. Although Plaintiff used to be on Lasix for the condition, she could no longer afford it. AR 39. Plaintiff testified to receiving some treatment sponsored by the county. AR 39. Ever since she had been taken off Medi-Cal, Plaintiff had been on "MISP," sponsored by the county. AR 40.

In addition to the swelling in her legs, Plaintiff complained of varicose veins, and that the swelling affected her ability to stand. AR 40. When asked how long she could stand before she would be forced to sit down, Plaintiff estimated fifteen minutes if her legs were swollen. She claimed that she could stand for about forty-five minutes at the most when they were not swollen. AR 40.

Plaintiff is able to walk a couple of blocks before she has to stop. AR 41. Where lifting was concerned, Plaintiff claimed that she had difficulty bending down and standing back up because of her lower back pain. AR 41. Often the pain would radiate up her back and linger between her shoulders where it would remain indefinitely. AR 41. Plaintiff used heating pads and Anacin to ease her pain. AR 41. When asked why she had not sought prescription medication for her back pain, Plaintiff testified that she was not aware that she could get any through "MISP." AR 42. Although she was able to raise her arms overhead without much discomfort, keeping them at shoulder height irritated her back. AR 42. Plaintiff also claimed that the lower back pain was exacerbated by her spina bifida. AR 43.

Upon being asked how much weight she could lift without feeling discomfort, Plaintiff replied not more than three to five pounds. AR 43. Plaintiff also said that at the very most she could sit for an hour before she would have to get up. AR 43. Plaintiff took no medication for her hepatitis C, but claimed that she would sometimes turn yellow in the face on account of the illness. AR 43. She also referred to pain in her left lower abdomen, claiming that the pain would

strike up to four or five times a week and had been coming and going for the last five years.  AR 44.

Plaintiff also mentioned daily bouts of cramping in her legs and thighs, which were often aggravated by Plaintiff's consumption of water pills and/or her lymphedema. AR 44.  According to Plaintiff, the cramping would be more severe when her legs were swollen. Oftentimes, the excruciating pain would awaken her, and she would have to work out the cramps. AR 45. On some occasions, Plaintiff would have to stand under a hot shower to alleviate the pain.  The cramps would often last from five to twenty minutes at a time, and often struck up to five times a week. AR 45.  The cramping would often hit at night, but would also occur during the day if Plaintiff contorted in an awkward manner. AR 46.

Plaintiff was then asked about her son, whom she saw on a frequent basis, especially since he had been paroled to her house. AR 46. According to Plaintiff, her son had lived with her for about a year to a year-and-a-half. AR 47. Now however, he is working and has his own apartment in Clovis. AR 47.

When asked about her vision, Plaintiff stated that she had problems seeing at a distance. AR 47. She stated that although she could get glasses to correct the problem, she could not afford them because she had no Medi-Cal. AR 47.

ALJ Larsen then questioned VE Najarian. For the first hypothetical, the ALJ asked the VE to assume a worker of Plaintiff's age, education and work experience. Plaintiff had no past relevant work. AR 48.  The ALJ asked the VE to assume that such a person could lift and carry twenty pounds occasionally, ten pounds frequently, and could stand and walk a total of six hours and sit a total of six hours in an eight hour day, but could not climb ladders, ropes or scaffolds, and could occasionally kneel, crouch, crawl and climb ramps or stairs. The ALJ told the VE to consider that this person could frequently balance and stoop, and could understand, remember and carry out simple one or two-step job instructions. When asked whether a person with such limitations could perform any jobs in the regional or national economy, the VE replied that there were some light, unskilled jobs that were of a one, two-step nature.  AR 48. According to the VE,

one such example would be in the area of production work, and another in the area of assembly. A third example would be in the area of hand packers. AR 48.

For the second hypothetical, the ALJ asked the VE to consider a worker, again, of Plaintiff's age, education and work experience, who could stand and walk less than two hours and sit less than four hours in an eight-hour day. The VE answered that such a person could not perform any jobs in the regional or national economy. AR 49.

For the third hypothetical, the ALJ asked the VE to consider another worker, with the same vocational profile, who would be unable to maintain concentration and attention through two hour increments in an eight-hour day. The VE replied that there were no such jobs available in the regional or national economy. AR 49.

Medical Record

The record is summarized here with particular regard to the reports of Adi Klein, M.D., and Greg Hirokawa, M.D. Nonetheless, the record as a whole was reviewed and will be specifically referenced when appropriate.

John Donnelly, M.D., conducted a preoperative psychiatric evaluation of Plaintiff in August 1999, and made the following diagnoses: alcohol dependence in full remission, opioid dependence, methamphetamine dependence, and morbid obesity. AR 253.

On March 6, 2000, Plaintiff underwent a Roux-en-Y bypass and cholecystectomy, performed by H. Gladen, M.D. The postoperative diagnosis was morbid obesity refractory to medical management. AR 231.

On June 17, 2002, Plaintiff underwent a comprehensive consultative medical examination by Chinappa R. Nareddy, M.D., Board-certified internist. Dr. Nareddy made the following report: (a) a history of morbid obesity, status-post Roux-en-Y surgery, presently doing fairly well, (2) bilateral swelling of the lower extremities and (3) history of hepatitis C. AR 56. In a functional capacity assessment, Dr. Nareddy opined that Plaintiff could lift and carry ten to twenty pounds, she could sit, stand and walk without restrictions, but would not be able to climb, stoop, push or pull. AR 56.

On July 20, 2002, Ekram Michiel, M.D., Board-certified psychiatrist, performed a consultative psychiatric evaluation of Plaintiff and diagnosed her with (1) depressive disorder, not otherwise specified and (2) opiate dependence of agonist therapy. AR 57. Dr. Michiel also opined that Plaintiff would be able to maintain adequate attention and concentration, could carry out simple one or two-step job instructions, and would be able to relate and interact appropriately with coworkers, supervisors and the general public. AR 57.

On July 6, 2006, Plaintiff underwent a comprehensive psychiatric evaluation performed by Greg Hirokawa, M.D. According to Dr. Hirokawa's assessment, Plaintiff's ability to understand and remember very short and simple instructions was unlimited. AR 177. Her ability to carry out detailed instructions was good. He also found that Plaintiff's ability to maintain attention and concentration for an extended period of time was good. AR 177. Dr. Hirokawa also noted that Plaintiff's social judgment and awareness of socially appropriate behavior was good. Plaintiff also evinced an ability to perform according to a schedule, maintain regular attendance and be punctual. AR 177. In sum, Dr. Hirokawa concluded that Plaintiff possessed the ability to function independently and to maintain an ordinary routine without supervision. He also surmised that Plaintiff could complete a normal workday and a workweek, and could perform at a consistent level. AR 178.

A physical residual functional capacity assessment performed by medical consultant, E. A. Fonte, on July 20, 2006, indicated that Plaintiff was capable of lifting and carrying twenty pounds occasionally and ten pounds frequently. AR 185. In addition, the medical consultant opined that Plaintiff could stand or walk for a total of about six hours in an eight-hour workday, and could sit for a total of about six hours in an eight-hour workday. AR 185. Her ability to push and pull was unlimited. AR 185. Additionally, Plaintiff could occasionally perform climbing ramps, stairs, balancing, stooping, kneeling, crouching, and crawling motions. AR 185.

In a psychiatric review of Plaintiff conducted by R. Y. Hood, M.D., on August 2, 2006, Plaintiff was diagnosed with having affective disorders and personality disorders characterized by persistent disturbances of mood or affect, intense and unstable interpersonal relationships, and impulsive and damaging behavior. AR 194.

On July 12, 2006, Adi Klein, M.D., performed a comprehensive internal medicine evaluation of Plaintiff. AR 179. Dr. Klein assessed Plaintiff with bilateral lymphedema and back pain due to prior morbid obesity. AR 182. Dr. Klein opined that Plaintiff possessed the ability to lift and carry twenty pounds occasionally, and ten pounds frequently, that she could walk and stand two hours in an eight-hour work day, and sit six hours in an eight-hour work day. He identified no postural, manipulative, visual, communicative or environmental limitations. AR 182.

In an assessment form dated December 29, 2006, it was noted that Plaintiff had the ability to lift and carry fifty pounds occasionally, and twenty-five pounds frequently. AR 204. The assessment indicated that Plaintiff could stand or walk for a total of about six hours in an eight-hour work day and could sit for about six hours in an eight-hour work day. AR 204. Plaintiff's ability to push or pull was unlimited. AR 204. Plaintiff was assessed with the ability to do the following frequently: balancing and stooping, and the following occasionally: climbing stairs and ramps, kneeling, crouching and crawling. AR 205.

On July 30, 2007, Plaintiff underwent a comprehensive mental health assessment which affirmed earlier findings regarding Plaintiff's depressive disorder, lymphedema, hepatitis C, spina bifida and arthritis. AR 216.

<u>ALJ's Findings</u>

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 28, 2006, the application date; and that Plaintiff had the following severe impairments: history of hepatitis C, lymphedema, adjustment disorder with mixed emotional features, polysubstance dependence in partial remission, and personality disorder (not otherwise specified). AR 10.

Based on a careful consideration of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently. That Plaintiff could frequently sit, or stand and walk for a total of six hours in an eight-hour day, and could occasionally kneel, crouch, crawl and climb ramps or stairs. AR 12. He noted that she could never climb ladders, ropes, or scaffolds. AR 12.

Given this RFC, the ALJ determined that Plaintiff was capable of performing jobs that exist in significant numbers in the national economy. AR 14.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) has not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform her past relevant work since she had no past relevant work history; but (5) retained the RFC to perform jobs that exist in significant numbers in the national economy. AR 14.

Here, Plaintiff argues that the ALJ (1) erred by relying on the presumption of continuing non-disability in this case thus applying administrative res judicata, (2) erred in failing to attach due weight to the findings made by examining physician, Dr. Klein; (3) Plaintiff also contends that this Court should reverse and order the immediate payment of benefits.

**DISCUSSION**

A.     <u>Administrative Res Judicata</u>

Plaintiff contends that the ALJ erred in applying administrative res judicata since Plaintiff had presented evidence of changed circumstances to rebut the presumption of continuing non-disability with respect to the period after October 27, 2004, the date of the prior decision. Here, the ALJ acknowledged the prior decision and noted that the principles of res judicata created a presumption of continuing non-disability following the period previously adjudicated. AR 8. He stated that Plaintiff may rebut the presumption by proving "changed circumstances indicating a greater disability." AR 8. The ALJ further noted that he was required to adopt the findings from the prior decision, which included a conclusion that plaintiff retained the ability to perform light exertion work, unless there was new and material evidence relating to such findings. AR 8.

The principles of res judicata apply to administrative decisions; however, the doctrine is not as rigidly applied to administrative proceedings as it is to judicial proceedings. *See Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988); *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1998). A previous final determination of non-disability also creates a presumption of continuing non-disability with respect to any subsequent unadjudicated period of alleged disability. *See Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995); *Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985). An ALJ's finding of non-disability creates "a presumption that [the claimant] continued to be able to work after that date." *Id*. To overcome this presumption, the claimant must prove "changed circumstances" indicating a greater disability. *See Chavez*, 844 F.2d at 693. The presumption may be overcome by a showing of "changed circumstances," such as new and material changes to the claimant's residual functional capacity, age, education, or work experience. *See Lester*, 81 F.3d at 827-828; *see also Chavez*, 844 F.2d at 693. For example, a change in age status after the first determination is a changed circumstance sufficient to rebut the presumption of continuing non-disability and therefore precluded the application of res judicata. *Id*. Accordingly, res judicata does not apply when the claimant raises an issue not considered in the previous decision, such as the existence of a new impairment, or demonstrates an increase in the severity of an impairment, either one of which adversely affects his residual functional capacity. *See Lester*, 81 F.3d at 827 ("new or more severe existing impairments that do not adversely affect the claimant's RFC do not constitute a greater disability.") "The first ALJ's findings concerning the claimant's residual functional capacity, education, and work experience are entitled to some res judicata consideration in subsequent proceedings." *Chavez*, 844 F.2d at 694.

In a prior decision dated October 27, 2004, the ALJ made the following findings. The ALJ found Plaintiff to be disabled within the meaning of the Social Security Act beginning October, 1, 1990. AR 61. The medical evidence established that Plaintiff had a history of morbid obesity, status post Roux-en-Y surgery, bilateral swelling of the lower extremities, hepatits C with fatigue, and opiate dependence on agonist therapy. At the time of the decision, Plaintiff weighed 181 pounds - considered obese, and was forty-six years old. AR 58. The ALJ also noted

that there had been improvement in the Plaintiff's medical condition since March 20, 2000. AR 62. He concluded that beginning August 1, 2002, Plaintiff had the RFC to lift and carry ten to twenty pounds, to stand and walk six hours in an eight-hour workday, and to sit six hours in an eight-hour workday. He found that Plaintiff could only occasionally climb and stoop, and could occasionally push and pull with the lower extremities. AR 62. The ALJ also reported that Plaintiff retained the mental RFC to understand, remember, and carry out one and two step instructions, to maintain attention and concentration and to relate and interact appropriately with coworkers, supervisors and the general public. AR 62. Taking into consideration an exertional capacity for light unskilled work and the Plaintiff's age, education and work experience, the ALJ concluded that the Plaintiff was not disabled under grid rule 202.20. AR 62. 20 C.F.R. § 416.969. The ALJ also found that Plaintiff's capacity for the full range of light, unskilled work had not been significantly compromised by her nonexertional limitations. He therefore concluded that Plaintiff was no longer disabled. AR 62.

In the decision under review here, ALJ Larsen discussed some of the medical evidence submitted after the previous decision, i.e., the relevant medical records, and considered the findings of the examining and consultative physicians obtained since the prior decision, and concluded that the Plaintiff had not presented any new or material evidence warranting a change in her RFC. AR 8-14.

The ALJ found that on July 6, 2006, Plaintiff underwent a comprehensive psychiatric evaluation performed by Greg Hirokawa, M.D., in which he reported that Plaintiff displayed an unlimited ability to understand and remember very short and simple instructions, and her ability to carry out detailed instructions was good. AR 177. He also found that Plaintiff was capable of maintaining attention and concentration for an extended period of time. He concluded that Plaintiff could complete a normal workday and workweek and could perform at a consistent level. AR 177. This was a marked improvement from the earlier ALJ's findings that Plaintiff could not carry out technical and/or complex instructions and could only maintain adequate attention, as opposed to maintaining it for a an extended period of time. AR 57.

The ALJ also noted that a physical RFC assessment performed on July 20, 2006, indicated that Plaintiff was capable of lifting and carrying twenty pounds occasionally, and ten pounds frequently. AR 185. Plaintiff could also stand or walk for a total of about six hours in an eight-hour work day, and could sit for a total of about six hours in an eight-hour workday. AR 185. Her ability to push and pull was unlimited. Plaintiff also possessed the ability to climb ramps and stairs, and do balancing, stooping, kneeling, crouching and crawling motions occasionally. AR 185. These findings also indicated a marked improvement from the date of the prior decision in which the ALJ concluded that Plaintiff possessed the RFC to lift and carry ten to twenty pounds, to stand and walk six hours in an eight-hour workday, and to sit six hours in an eight hour workday. The previous ALJ also noted that Plaintiff could only occasionally push and pull with the lower extremities, whereas currently she possesses an unlimited ability to push and pull with the lower extremities. AR 62, 185.

On August 2, 2006, R.Y. Hood., M.D., diagnosed Plaintiff with having affective disorders, personality disorders and substance addiction disorders. AR 189. Plaintiff's affective disorder was characterized by depressive syndrome, pervasive loss of interest in almost all activities, appetite disturbance, sleep disturbance, psychomotor agitation, decreased energy, feeling of guilt or worthlessness, and difficulty concentrating or thinking. AR 194. Her personality disorder was characterized by persistent disturbances of mood or affect and intense and unstable interpersonal relationships and impulsive and damaging behavior. AR 194. In the previous 2004 decision, the ALJ had taken into consideration Plaintiff's history of depression and had noted that Plaintiff had been prescribed anti-depressant medication and had seen a psychiatrist only once. The ALJ also found that Plaintiff was cooperative and oriented in all respects. AR 56, 57. Here too, the ALJ noted that Plaintiff suffered from depression that was predominantly attributable to her finances, but that despite her complaints, she had not received any medical treatment for the depression. AR 13.

The ALJ also made the following observations that seemed to contradict Plaintiff's contentions of "changed circumstances." Plaintiff testified that she could ride her bike for one to one and a half miles, and that she did her laundry, vacuuming, cooking and dusting. AR 35-36.

The ALJ also noted Plaintiff's non compliance in taking prescription medication, suggesting that her symptoms may not have been as debilitating as she alleged. AR 13. The ALJ also attached great weight to Dr. Hirokawa's opinion regarding Plaintiff's ability to accept instructions from supervisors, and respond appropriately to criticism, that she could perform activities within a schedule, maintain regular attendance and be punctual, and that she could complete a normal workday and workweek without interruptions, withstand the stress of a routine workday, and deal with various changes in a work setting. AR 14. Based on his assessment of the record, and the VE's testimony, the ALJ concluded that although Plaintiff could not perform a full range of light work, she could nevertheless perform a significant number of jobs in the national economy.

In conclusion, the ALJ determined that the record as of October 27, 2004, the date of the prior decision through to the present, was devoid of any "new or material evidence" warranting a change in Plaintiff's RFC. Therefore, the ALJ's conclusion was supported by the evidence, given that Plaintiff provided no proof of "changed circumstances to rebut the presumption of continuing nondisability. Hence, the ALJ's ultimate non-disability determination is conclusive as it is free from legal error and is supported by substantial evidence in the record.

B.     Examining Physicians' Opinions

Plaintiff contends that the ALJ impermissibly rejected the opinion of consultative examiner, Dr. Adi Klein, as being "overly restrictive." Plaintiff in particular contests that the opinion - which was based on a comprehensive internal medicine evaluation of Plaintiff, and which expressed Dr. Adi's belief that Plaintiff could stand or walk no more than two hours in an eight-hour day - was improperly dismissed by the ALJ.

The ALJ is responsible for resolving conflicts in the medical record. *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003); *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships. *Lester*, 81 F.3d at 830. As such, an ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on "clear and convincing reasons." *Lester*, 81 F.3d at 830-831. Where such an opinion is contradicted, however, it may be rejected for "specific and

legitimate reasons that are supported by substantial evidence in the record." *Andrews v. Shalala,* 53 F.3d 1035, 1043 (9th Cir. 1995). An ALJ may reject the testimony of an examining, but non-treating physician, in favor of a non examining, non treating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). Reliance on the opinion of a consulting examining physician is appropriate, and the opinion of such an expert is substantial evidence where it is based on the expert's own examination and clinical findings. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

  Here, the ALJ attached significant weight to Dr. Klein's other opinions, but found that his opinion regarding her limitation to standing and walking only two hours was "overly restrictive." AR 14, 182. The ALJ concluded instead that Plaintiff retained the ability to stand and walk for a total of six hours in an eight-hour day. AR 12. Having characterized Dr. Klein's opinion as "overly restrictive," the ALJ articulated no reasons for his conclusion. In short, the ALJ's justification for the dismissal of Dr. Klein's opinion was perfunctory and conclusory.

  The ALJ appears to have given more weight to the opinion of non examining state agency medical consultant, E. A. Fonte. In order to reject the testimony of Dr. Klein (the examining physician) in favor of the medical consultant, (the non examining state agency physician) the ALJ had to give specific, legitimate reasons supported by substantial evidence in the record. That he failed to do here. Furthermore, since Dr. Klein himself performed the comprehensive internal medicine evaluation of Plaintiff, his opinion, based on his own examination and clinical findings, constituted substantial evidence. *Tonapetyan*, 242 F.3d at 1149. Therefore, the ALJ impermissibly rejected Dr. Klein's opinion without articulating specific and legitimate reasons for doing so. In light of the Ninth Circuit's demand for specificity, the ALJ's conclusory decision fails to satisfy the requisite standard. Therefore, the ALJ's decision to reject the opinion of the examining physician (Dr. Klein) was not justified and should be reevaluated on remand.

1. <u>The Grids</u>

  Plaintiff also contends that the ALJ mechanically applied the Medical-Vocational Guidelines (Grids) for "younger individuals" when Plaintiff should have been categorized as

"closely approaching advanced age," even though Plaintiff was four months shy of her fiftieth birthday. Specifically, Plaintiff argues that had the ALJ heeded Dr. Klein's opinion as to her standing and walking limitations, and had he categorized her as "closely approaching old age" as of the date of his decision, December 26, 2007, Plaintiff would have been found disabled under grid rule 201.12 as of her fiftieth birthday on May 1, 2008.

The Secretary can use the age categorization on its grid to decide disability questions. *Calvin v. Heckler*, 782 F.2d 802, 805 (9th Cir. 1986). However, the Secretary should not apply the age categories "mechanically in a borderline situation." 20 C.F.R. § 404.1563(a). An ALJ must consider whether an older age category would be more appropriate when "you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled." 20 C.F.R. § 404.1563(b). "It is incumbent upon the Secretary to decrease his reliance upon the grids in cases where the individual claimant's circumstances approach the upper limits of the grid's guidelines." *Russell v. Bowen*, 856 F.2d 81, 84 (9th Cir. 1988).

In *Russell*, 856 F.2d at 83, petitioner was fifty-nine years and five months old at the time of the final ALJ decision. The court held that petitioner was more than a few days short of the cut-off date, and was in fact closer to the age of fifty-nine than to age sixty. *Id.* at 84. The court further stressed that "line drawing is reasonable and in accordance with the express language and purpose of these regulations." *Id*.

In *Gonzalez v. Secretary of Health and Human Services*, 784 F.2d 1417, 1418 (9th Cir. 1986), the court held that "where the claimant's circumstances approached the upper limits of the guidelines, it is incumbent upon the Secretary to decrease his reliance upon the grids." *Id.* at 1420. In such situations, the court advised that the better method to demonstrate the claimant's abilities to perform substantial gainful work is through testimony of a vocational expert. *Id*.

Here, the ALJ theorized that if Plaintiff could perform the full range of light work, she would be "not disabled" as a matter of administrative law, under Medical-Vocational Rule 202.20. AR 15. Concluding that she could not perform the full range of light work, he then sought to decide if she could nevertheless perform a significant number of jobs. Based on the

testimony of VE Najarian, the ALJ determined that given Plaintiff's age, education, work experience, and RFC, that she could adjust successfully to other work that existed in significant numbers in the national economy. AR 15. Therefore, the ALJ concluded that under the framework of Medical-Vocational Rule 202.20, Plaintiff was accordingly "not disabled."

On December 26, 2007, the date of the ALJ decision, Plaintiff was more that 120 days short of the cut-off date. The Ninth Circuit held in *Calvin*, that "the distinction drawn in the regulations between forty-nine and fifty may be imperfect, but it is not irrational." *Calvin*, 782 F.2d at 806. "Lines must be drawn at some point, otherwise there would be no efficient way to utilize the Grid system." *Russell*, 856 F.2d at 84. "While the difference between age forty-nine and age fifty is obviously arbitrary, this distinction in age is valid as the only feasible way of putting into legal effect the general truth that aging affects one's ability to learn, resilience to life's misfortunes and ability to adapt to change." *Calvin*,782 F.2d at 806. Therefore, in accordance with Ninth Circuit precedent, the ALJ was not required to consider the application of an older age category in determining whether Plaintiff - whose age at the time of the decision was more than 120 days shy of the cutoff date - was entitled to supplemental security income. Thus there was no error.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record with regard to the issue of the examining physician's opinion, and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Karen D. Matthews and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:     **September 30, 2009**                    **/s/ Gary S. Austin**
                                                  UNITED STATES MAGISTRATE JUDGE